(13 Misc. Rep. 32.)

### MARMONSTEIN v. PENNSYLVANIA R. CO.

(Common Pleas of New York City and County, General Term.   June 3, 1895.)

1. CARRIERS—CONNECTING LINES—LIABILITY FOR BAGGAGE.
   In an action for the loss of baggage beyond the terminus of the initial carrier's route, it is incumbent upon the plaintiff to prove a contract by such carrier to transport beyond that terminus.

2. SAME—PROOF OF CONTRACT—BAGGAGE CHECK.
   A check merely indicating the destination of the baggage, and the different railroads over which it is to pass, is not proof of such contract.

3. SAME—PASSAGE TICKET—KNOWLEDGE OF CONTENTS.
   The ticket given the owner of baggage at the time he pays for his passage, if received and kept by him, prima facie charges him with knowledge of its contents; and, if they exempt the initial company from liability on a connecting line, he cannot recover for loss of his baggage on such line.

4. SAME—POWERS OF BAGGAGE MASTER.
   A baggage master, as such, has no authority to contract for carriage beyond his company's route.

(Syllabus by the Court.)

Appeal from city court, general term.

Action by Jacob Marmonstein against the Pennsylvania Railroad Company. From a judgment of the city court (32 N. Y. Supp. 1146) affirming a judgment entered on a verdict in favor of plaintiff, defendant appeals. Reversed.

The plaintiff was one of a party transported at the expense of the Hebrew Charity Association from New York to Black Rock, Ark. They traveled under two party tickets issued by the Pennsylvania Railroad Company. The first ticket was a party ticket issued by the Pennsylvania Railroad Company for transportation from New York to St. Louis, and it consisted of four coupons. The first coupon was of the Pennsylvania Railroad Company itself, issued by that company, over its own line and on its own account, from New York to Pittsburgh, Pa. The next coupon was issued by the Pennsylvania Railroad Company, on account of the Pittsburgh, Cincinnati & St. Louis Railroad Company, from Pittsburgh to Indianapolis. The next coupon was issued by the Pennsylvania Railroad Company, on account of the Vandalia Line, from Indianapolis to St. Louis. The next coupon was issued by the Pennsylvania Railroad Company, on account of the St. Louis Bridge & Tunnel Railroad Company, from East St. Louis to St. Louis. It was expressly provided in the ticket that, in selling it for passage over other roads, the Pennsylvania Railroad Company acted only as agent, and assumed no responsibility beyond its own line. The second ticket was a party ticket issued by the Pennsylvania Railroad Company for transportation from St. Louis to Black Rock, Ark., and consisted of two coupons via the St. Louis, Iron Mountain & Southern Railroad to Hoxie, and via the Kansas City, Ft. Scott & Memphis Railroad from Hoxie to Black Rock, Ark. This ticket contained the same provision,—that the Pennsylvania Railroad Company, in selling it for passage over other roads, acted only as agent, and assumed no responsibility beyond its own line. The plaintiff had a bundle of clothes, for which he was given a check at the Desbrosses Street Ferry, in New York (No. 2,919), which stated the various lines over which the bundle was to go to Black Rock, Ark. The bundle was lost beyond the line of the defendant company.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Henry Galbraith Ward, for appellant.

Morris Cukor, for respondent.

PRYOR, J. Whatever the law in other jurisdictions, it is settled in this state that "the receipt of goods marked for a place beyond the terminus of the carrier's route does not import a contract to carry them to their final destination. Such a contract will not be inferred from the simple address of the goods. There must be other facts and circumstances sufficient to show a special contract." Condit v. Railroad Co., 54 N. Y. 500, 502; Berg v. Steamship Co., 5 Daly, 394; Rawson v. Holland, 59 N. Y. 611; Jennings v. Railway Co., 127 N. Y. 438, 28 N. E. 394. The principle is so prevalent in the United States as to be denominated the "American Rule," in distinction from the English doctrine. Note to Wells v. Thomas, 72 Am. Dec. 236. Before, therefore, the defendant could be affected with liability for the loss of the baggage on the connecting line, it was incumbent upon the plaintiff to prove that the defendant had engaged to transport the passenger beyond its route. It is only when the carrier so contracts that he must show a limitation of his common-law liability. Jennings v. Railway Co., 127 N. Y. 438, 28 N. E. 394. But the trial court disregarded the presumption of irresponsibility in favor of the initial carrier, and instructed the

jury that the burden was upon the defendant to prove that by a special agreement it was exempt from liability, except for loss upon its own line. Thus, in the opening sentence of his charge, the learned judge said that "the Pennsylvania Railroad Company, as a common carrier, has the right to limit its liability by limitations on its ticket; but, before they become binding upon a person treating with the railroad as a common carrier, there must be some notice brought to that person." Again, in response to a request to charge that "the defendant is not liable for any loss of plaintiff's baggage, except such as happened when it was in defendant's custody," the court answered: "I decline to charge that, except as I have charged. I have charged as to what would relieve them, and what would not relieve them." Throughout the charge it is assumed that, to defeat the action, it was obligatory upon the defendant to show an assent by the plaintiff to exempt it from liability on a connecting line. Indeed, whether such assent had been established was the only issue, besides the damages, submitted to the jury for determination: "If you find that there was a binding contract [to exempt the defendant], then the plaintiff cannot recover. If you find that it was not, then the plaintiff can recover." The issue was not in the case. The question was not whether the defendant had stipulated for release from the prima facie liability as common carrier, but whether it had contracted to be a carrier beyond its own terminus; and this issue was never before the jury. With such a radical misconception by the jury of the action and the issue, a correct verdict would be but a happy accident.

Irrespective of the charge, the appeal depends upon whether the evidence authorized the jury to find a contract by defendant to carry beyond its terminus. The baggage check was not, but the passage ticket was, evidence of such contract. Hyman v. Railroad Co. (Sup.) 21 N. Y. Supp. 119; Isaacson v. Railroad Co., 94 N. Y. 278; Milnor v. Railroad Co., 53 N. Y. 363, 368, 369; Quimby v. Vanderbilt, 17 N. Y. 306, 314. In the Milnor Case the court said: "The face of each ticket spoke for itself. One was the defendant's ticket, and the other was a Housatonic ticket; and persons purchasing such tickets would not infer that the defendant was operating the latter road, or had any other arrangement than an agency to sell tickets." In the Quimby Case, per Denio, J.: "We do not say that the receiving of separate tickets for the different lines is not evidence of some weight upon the question whether the contract was entire." The passage ticket, in terms, was on account of the connecting lines, and expressly stipulated against a liability for loss on those lines.

The court charged, and plaintiff now insists, that, to constitute the ticket a contract, its limitations must have been known and assented to by him, and that this fact must be established by the defendant. True, perhaps, of a restriction upon a carrier's common-law liability on its own route; and all the cases cited by plaintiff are authority only for that proposition. But, as we have said, the question here is whether the defendant undertook to transport over the connecting lines. The presumption is of a carrier's common-

law liability for goods in his custody; and, to escape this prima facie responsibility, the cases require a special contract. The presumption is against a carrier's responsibility for other companies; and, to impose such liability, an agreement to assume it must be shown. It was for the plaintiff, therefore, to prove a contract with the defendant to carry his baggage beyond its terminus; and, if the passage ticket constituted no such contract, what is the evidence of its existence? In all cases in which such a contract has been found, there were circumstances authorizing the inference of the contract; but here is nothing, besides the ultra-terminal destination, and the baggage check indicating that destination. This scintilla of proof, if such it be, is clearly insufficient to overcome the presumption of the defendant's exemption from the imputed liability. If, then, the passage ticket be no contract, because of plaintiff's nonassent to its terms, there is no evidence of defendant's agreement to carry beyond its route. If the ticket be such contract to carry, it is an agent only, with an express exoneration of defendant from the liability attempted to be fastened upon it.

The argument hitherto has proceeded on the postulate that the plaintiff had no notice of the terms of the passage ticket, but he himself testifies he knew it well enough to identify it on the trial. And the Hebrew Charity Association, his admitted agent in the purchase of the ticket, had such custody of it as to warrant the inference of an acquaintance with its conditions. In Steers v. Steamship Co., 57 N. Y. 1, the court of appeals say:

"The rule that in the absence of fraud, concealment, or improper practice [and none such is imputed to this defendant], the legal presumption is that stipulations contained in a common carrier's receipt for freight, limiting his common-law liability, were known and assented to by the person receiving it, applies to the carriers of passengers with their baggage."

If such presumption prevails to overcome the common-law liability of a carrier on his own route, a fortiori is it sufficient to repel the inference that he has assumed a liability against which another presumption already operates?

Failing all other resources, the plaintiff adduces a conversation with defendant's baggage master as evidence of a contract to carry beyond its terminus. Seeing the names of other companies on the check, plaintiff asked the baggage master: "How is this?" He answered: "Do not be afraid. The Pennsylvania Railroad will bring you to Black Rock, Arkansas." That this was no contract is apparent upon several grounds: First, it does not purport to be such; secondly, the contract for the carriage of plaintiff was already complete,—Lechowitzer v. Packet Co. (Com. Pl. N. Y.) 28 N. Y. Supp. 577; and, thirdly, "in the absence of special authority, a baggage master cannot bind the company by a contract to carry baggage beyond the terminus of its road." Isaacson v. Railroad Co., 94 N. Y. 278,—in which case, be it observed, the point decided is not repugnant to the dictum.

The conclusion is that the trial court erred in declining to dismiss the complaint, and in its charge to the jury. Judgment and order reversed, and new trial granted, with costs to abide the event. All concur.